753 A.2d 545

Steven DANIEL

v.

STATE of Maryland.

No. 1872, Sept. Term, 1999.

Court of Special Appeals of Maryland.

June 8, 2000.

578

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before HOLLANDER, EYLER and THIEME, JJ.

THIEME, Judge.

On October 29, 1993, appellant Steven Daniel was convicted by a jury in the Circuit Court for Baltimore City of first degree murder, conspiracy to murder, and use of a handgun. He was sentenced to consecutive life sentences plus twenty

years. Appellant appealed to this Court, and we reversed and remanded the case for a new trial. *Daniel v. State,* No. 183, September Term, 1994, 101 Md.App. 719 (unreported).

Appellant was retried in May of 1996. He was convicted of conspiracy to murder and acquitted of first degree murder. The court sentenced appellant to life imprisonment. Appellant appealed to this Court, and we again reversed and remanded the case for a new trial. *Daniel v. State,* No. 1062, September Term, 1996, 116 Md.App. 734 (unreported).

The second retrial took place in December 1998. Appellant was convicted of conspiracy to murder and was sentenced to life imprisonment. Appellant appeals from that conviction and presents the following questions for our review:

1. Did the trial court err in allowing the lead detective to testify that, after he "received all the information," he "eliminated" Sterling Bailey "as a suspect"?

2. Did the trial court err in allowing the State to comment that appellant's silence at the time he was apprehended showed consciousness of guilt?

We answer "no" to these questions and affirm the judgment of the trial court.

## Facts

In this appeal, both appellant and the State accept the facts as summarized by this Court in *Daniel v. State,* No. 1062, slip op. at 1–2. In our unreported opinion, we summarized the facts as follows:

On 19 December 1992, appellant Steven Daniel, Maurice Osborne, and Sterling Bailey attended a party. At the party, Bailey allegedly overheard a conversation between Osborne and appellant in which Osborne stated he was upset with his girlfriend, Chaquista Spriggs, and wanted her killed. Earlier in the day, Spriggs had informed Osborne that she was seeing another man.

Osborne had previously agreed to pick Spriggs up from work and walk her home at 10:00 that evening. Appellant and Osborne planned that appellant would follow as Os-

borne walked Spriggs home from work. According to Bailey, appellant offered to kill Spriggs and make it look like a robbery gone awry by inflicting a non-fatal gunshot wound on Osborne. At the time of the conversation, Osborne was carrying a .9 millimeter gun.

Appellant left the party some time before 10:00 p.m. Around the same time, Osborne also left the party to pick up Spriggs when she got off work. After appellant and Osborne had left the party, Bailey left with Dorcena Douglas to go to Douglas's house and check on her children. Bailey stayed at Douglas's house for about 15 minutes and then returned to the party. At approximately 10:15 p.m., Spriggs was fatally shot in the head; Osborne was shot in the shoulder, but survived.

Although Bailey testified that he believed that Osborne and appellant were joking when they discussed killing Spriggs earlier in the evening, Bailey became concerned when Osborne had not returned to the party by 11:00 p.m. Bailey learned that a shooting had occurred near Spriggs's place of work and that the victims were taken to Sinai Hospital. Around midnight, Bailey visited Osborne at the hospital and learned that Spriggs was dead. When Bailey returned to the party, he was allegedly told by appellant in detail how he killed Spriggs and shot Osborne. At approximately 2:00 a.m., appellant walked Douglas home from the party and slept on her couch. Douglas testified that she saw a gun in appellant's coat pocket.

Approximately two months later, appellant was arrested and charged with murder in the first degree, conspiracy to commit murder, and handgun charges.

### Discussion

Appellant's first argument on appeal is that the court erroneously permitted the investigating police officer, Sergeant Thomas Pellegrini, to testify on redirect examination as to his "personal opinion" about Bailey's involvement in the case and his general veracity. Specifically, appellant contends that the officer should not have been permitted to answer the State's

question regarding Bailey's "status" in the investigation. We disagree and find that Sergeant Pellegrini's testimony was properly admitted.

## Standard of Review

Generally, the scope of examination of witnesses is a matter left largely to the discretion of the trial court; we will not disturb the court's determination absent a clear abuse of discretion. *See, e.g., Green v. State,* 127 Md.App. 758, 764, 736 A.2d 450 (1999) (citing *Conyers v. State,* 354 Md. 132, 729 A.2d 910 (1999); *Oken v. State,* 327 Md. 628, 669, 612 A.2d 258 (1992), *cert. denied,* 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993); *Trimble v. State,* 300 Md. 387, 401, 478 A.2d 1143 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985)).

The trial judge's discretion in controlling the scope of redirect examination is wide. *See Bailey v. State,* 16 Md.App. 83, 110–111, 294 A.2d 123 (1972). Even inquiry into new matters not within the scope of cross-examination may be permitted, and a party is generally entitled to have his witness explain or amplify testimony that he has given on cross-examination and to explain any apparent inconsistencies. *Feeney v. Dolan,* 35 Md.App. 538, 371 A.2d 679, *cert. denied,* 280 Md. 730 (1977). The judge's discretion is particularly wide "where the inquiry is directed toward developing facts made relevant during cross-examination or explaining away discrediting facts." *Bailey,* 16 Md.App. at 110–111, 294 A.2d 123 (citing *Mills v. State,* 12 Md.App. 449, 279 A.2d 473, *cert. denied,* 263 Md. 717 (1971)).

## Cross Examination

In his brief to this Court, appellant asserts that "[t]he State's theory of the case was that its witness, Sterling Bailey, truthfully recounted Appellant's participation in the conspiracy and murder of the victim, and the wounding of her jilted boyfriend Maurice Osborne to cover up the conspiracy to murder her." The defense theory, however, "was that it was actually Sterling Bailey who conspired with Osborne

and committed both shootings." Consistent with that theory, defense counsel's cross-examination of Sergeant Pellegrini primarily focused on his interviews with Bailey. Counsel repeatedly asked the officer whether he believed Bailey's statements (*e.g.*, "[Y]ou didn't really believe that, did you?") and whether Bailey was a suspect in the crime (*e.g.*, "[Y]ou began to say to him that, in fact, he was a suspect. Didn't you?"). The following excerpts from Sergeant Pellegrini's cross-examination further illustrate that line of questioning.

[DEFENSE COUNSEL]: If you're talking on the 26th, 27th, now you're looking for [Bailey] maybe even as a suspect or a participant because you know the two of them are together during the day. I'm not saying he is a suspect—

[ASSISTANT STATE'S ATTORNEY]: Objection, Your Honor. There's a question.

THE COURT: Let him answer. Try to keep it at one question.

[DEFENSE COUNSEL]: Okay. You now know that he, Mr. Bailey[,] probably knows something and might be involved. Correct?

THE COURT: You need to clarify on what day. I think that's the problem.

[SGT. PELLEGRINI]: Yeah.

[DEFENSE COUNSEL]: On the 26th or 27th of December. I'm sorry.

[SGT. PELLEGRINI]: Let me try to make this clear. On the 21st, I get the name of Sterling as being with him or at the party or wherever it was. Now I don't set out immediately to track him down and bring him in—

Q: I understand.

A: —because as I recall, I'm on my midnight shift, it's close [to] Christmas—

Q: I understand.

A: —the 21st I do the interview—

Q: And you've got the holiday. I understand all those reasons.

A: —and the next day comes through and I'm trying to locate him. It's not like he's a suspect and I have to make an arrest.

Q: No, I understand.

Defense counsel also asked the officer numerous questions that required him to give his opinion of Bailey's credibility and to speculate about Bailey's true knowledge of the crime. Defense counsel acknowledged, through his questions, that the officer would be making credibility determinations based on his experience as an investigator.

[DEFENSE COUNSEL]: ... you're an experienced homicide detective, you sat down with him, and you took a statement from him, didn't you? You questioned him.

[SGT. PELLEGRINI]: Yes, I—

Q: Interrogated him.

A: I took some notes, yeah.

Q: Okay. But notes are just as I take notes here, you're memorializing what someone said. You want them to be accurate, is that correct?

A: Well, sure. I don't want to mislead myself.

Q: Exactly. And you want to get as much information as you can. Correct?

A: Yes, Sir.

Q: And for two reasons. One, the more information you get from the witness on day one, when you go back on day two, if he says something differently, those are inconsistencies that help you determine their believability and credibility to find out what's going on. You're an investigator.

\* \* \*

Q: ... Now as you said before, conflicting statements of witnesses make you suspicious of their credibility. Correct? Their believability.

A: Exactly. Yeah.

Q: Okay. Now it's fair to say that this statement has a lot of untruth in it. Doesn't it?

[ASSISTANT STATE'S ATTORNEY]: Objection, Your Honor.

THE COURT: Overruled.

[DEFENSE COUNSEL]: It's a lie, isn't it?

[ASSISTANT STATE'S ATTORNEY]: Objection, Your Honor.

THE COURT: Overruled. You may answer.

[SGT. PELLEGRINI]: I think the stuff that's there is true. It's just not complete with—

[DEFENSE COUNSEL]: Not complete.

A: with why he knew all the information. It's just not the full story.

\* \* \*

[DEFENSE COUNSEL]: Real simply here. This person did not come forward to you and tell you the truth, did they?

A: He didn't tell the whole truth. But the statement is pretty much accurate. And I don't see a lie in it. I just don't see— he didn't explain how he had all the information that he gave me.

Q: Did you ask him?

A: I wasn't—when the one in particular thing about the description of the girl being shot in the head, that troubled me.

\* \* \*

A: At that point, I'm beginning to think, you know, how would he know that? There's a good possibility that he knows it because he was there.

Q: And that he was the shooter.

A: Okay. And then I had to investigate and satisfy myself about that troubling part. And I satisfied myself through my investigation that that was not the case.

### Redirect Examination

Following defense counsel's cross-examination, the State conducted a redirect examination of Sergeant Pellegrini. On appeal, appellant challenges the following portion of the State's redirect examination:

[ASSISTANT STATE'S ATTORNEY]: I believe [defense counsel] asked you about the 21 st of December, when you got Mr. Bailey's name.

[SGT. PELLEGRINI]: Yes.

Q: I believe that's when you said he was not a suspect.

A: That's correct. He was a person that was there and had been with Maurice pretty much all day. So he was a crucial source of information. But certainly I had no information that indicated he was a suspect at that time.

\* \* \*

[ASSISTANT STATE'S ATTORNEY]: Well in terms of your investigation, even after you received all the information that you did, what was Mr. Bailey's status?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[ASSISTANT STATE'S ATTORNEY]: What was his status?

[SGT. PELLEGRINI]: He was eliminated as a suspect.

[DEFENSE COUNSEL]: Objection.

THE COURT: Come to the bench.

During the bench conference, the court asked defense counsel to state the basis of his objection to the State's question. The following colloquy ensued:

[DEFENSE COUNSEL]: Calls for a conclusion which it's all based upon hearsay. And it's a conclusion, I don't think he can give a conclusion of whether someone committed a crime or didn't commit a crime.

THE COURT: I took his testimony as he can only give it based on him as the investigator. As far as he's concerned, he was eliminated as a suspect.

[DEFENSE COUNSEL]: But the problem with him being an investigator is it doesn't just—things he observes, it's also information he receives from other people, all of which has a hearsay basis to it, that can be got from [another witness], which means that he's making a conclusion based upon hearsay. So that conclusion is based upon inadmissible evidence through this witness.

THE COURT: What he draws upon to make his decisions as an investigator as to arrest or not arrest, is not to adhere to the same rules that we do here. This is not testimony he relied upon that was inadmissible. He relied upon all kinds of information to make his determination. You can't put all of that under the hearsay microscope. Not for his purposes.

The court permitted Sergeant Pellegrini to testify that Bailey was eliminated as a suspect. On appeal, appellant maintains that the court's decision to admit that testimony was error. As we begin our analysis, we note at the outset that implicit in appellant's argument that Sergeant Pellegrini's testimony was "based upon hearsay" is the assumption that the basis for the officer's testimony was apparent. On the contrary, the State did not inquire as to what formed the basis for the officer's testimony that Bailey was "eliminated as a suspect." At trial and on appeal, appellant assumes that the officer's testimony was based on his interviews with Bailey. The officer testified on cross-examination, however, that after interviewing Bailey his suspicions were raised and he needed to investigate further. *After further investigation*, he was satisfied that Bailey was not a suspect. Therefore, the officer's own testimony, elicited by the defense, suggests the opposite of appellant's assumption—the ultimate "conclusion" that Bailey was "eliminated as a suspect" was *not* based on the officer's conversations with Bailey. In ruling on the objection, however, the court appears also to have assumed that Bailey's statements formed the basis for the officer's testimony. Therefore, we will accept that premise for purposes of our analysis.

*Hearsay*

■ Assuming Sergeant Pellegrini's testimony was based on Bailey's statements, appellant's contention that the testimony was "based upon hearsay" rests on the assertion that Bailey's statements were "hearsay." This is simply not the case. As the trial court correctly reasoned, what the officer "draws upon to make his decisions as an investigator as to arrest or not arrest, is not to adhere to the same rules that we do here." In other words, an interviewee's statements to an investigating police officer are not "hearsay" unless and until they are offered into evidence for their truth. *See* Maryland Rule 5–801. In this case, the objected-to testimony of the officer, that Bailey was "eliminated as a suspect," did not offer even remotely any of Bailey's statements into evidence. (Indeed, as we have discussed, the testimony may not even have been based on Bailey's statements.) Because Bailey's statements were not out-of-court statements "offered in evidence to prove the truth of the matter asserted," they were not "hearsay," and the officer's testimony was not "based upon hearsay." Therefore, the trial court did not err in overruling defense counsel's objection on that basis.

*Officer's "Conclusion"*

■ We further disagree with appellant's contention that Sergeant Pellegrini's testimony was inadmissible because it amounted to "a conclusion of whether someone committed a crime or didn't commit a crime." We cannot infer an officer's ultimate conclusion as to whether a particular individual committed a crime simply from his testimony about the status of an investigation: here, that a witness "was eliminated as a suspect." Without more information, such as (1) the basis for eliminating Bailey as a suspect, (2) an indication that the decision was Sergeant Pellegrini's, or (3) that Sergeant Pellegrini agreed with the decision, drawing such an inference is simply unwarranted.

■ Moreover, even if we could infer that Sergeant Pellegrini was drawing "a conclusion of whether someone commit-

ted a crime or didn't commit a crime," we note that appellant provides no support for the assertion that such testimony is improper. Indeed, police officers routinely testify about the conclusions they draw from their investigations that lead them to take various actions, such as making arrests, following "leads," interviewing witnesses, and eliminating suspects. *See, e.g., Jones v. State,* 310 Md. 569, 588, 530 A.2d 743 (1987), *vacated and remanded on other grounds,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916, *sentence vacated on remand on other grounds,* 314 Md. 111, 549 A.2d 17 (1988) (A detective's testimony was not inadmissible hearsay because it was not offered as an assertion of truth; rather, the testimony "concerning his initial interview with [the witness] was offered to explain how it came to be that police concluded [the defendant] was a suspect and included his picture among those in the photo array later shown to [the witness]").

██ It is elementary that, as long as the officer is able to provide the basis for his testimony, and the testimony is not inadmissible for other evidentiary reasons, an investigating police officer may properly testify about the conclusions he draws in the context of an investigation. This is particularly evident when one considers that *even the statements that led him to arrest the individual would be admissible* to show that the officer relied on and acted upon those statements. *See, e.g., Graves v. State,* 334 Md. 30, 38, 637 A.2d 1197 (1994) ("It is well established that a relevant extrajudicial statement is admissible as nonhearsay when it is offered for the purpose of showing that a person relied on and acted upon the statement and is not introduced for the purpose of showing that the facts asserted in the statement are true.") (and cases cited therein).

### *"Open the Door" Doctrine*

██ There is yet another basis for rejecting appellant's argument regarding Sergeant Pellegrini's testimony about Bailey's status in the investigation. During cross-examination, defense counsel asked the officer numerous questions about appellant's status as a suspect (*e.g.,* "... now you're looking for [Bailey] maybe even as a suspect or a participant ...";

"You now know that he, Mr. Bailey[,] probably knows something and might be involved. Correct?"). In doing so, the defense "opened the door" to questions about this issue during the State's redirect examination of the officer.

 "Under the 'opening the door' doctrine, otherwise irrelevant evidence may be admitted when the opposing party has 'opened the door' to such evidence." *Grier v. State*, 351 Md. 241, 260, 718 A.2d 211 (1998) (citing *Conyers v. State*, 345 Md. 525, 545, 693 A.2d 781 (1997); *Clark v. State*, 332 Md. 77, 84, 629 A.2d 1239 (1993)). The Court of Appeals has described the "opening the door" doctrine as "a rule of expanded relevancy that, under limited circumstances, 'allows the admission of evidence that is competent, but otherwise irrelevant.' " *Grier*, 351 Md. at 260, 718 A.2d 211 (citing *Conyers*, 345 Md. at 545, 693 A.2d 781).

The "opening the door" doctrine is really a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue, or (2) inadmissible evidence admitted by the court over objection. Generally, "opening the door" is simply a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue.

*Clark*, 332 Md. at 84–85, 629 A.2d 1239 (footnote omitted).

 The "open the door" doctrine does not, however, permit the admission of incompetent evidence—evidence that is inadmissible for reasons other than relevancy. *See Grier*, 351 Md. at 260–61, 718 A.2d 211; *Conyers*, 345 Md. at 546, 693 A.2d 781; *Clark*, 332 Md. at 87 n. 2, 629 A.2d 1239. In this case, the basis for defense counsel's objection, although somewhat vague, was that the officer's testimony was *based on* inadmissible hearsay. The objection was not, however, that Sergeant Pellegrini's testimony was hearsay itself.[1] There-

---

1. We note that the officer's testimony that Bailey "was eliminated as a suspect" was not hearsay, as it was not an out of court statement

fore, the only question before this Court as to the "open the door doctrine" is whether the officer's testimony was "incompetent" because it was "based upon hearsay." As we have previously discussed, we answer this question in the negative. Therefore, the hearsay rule was not implicated and did not bar application of the "open the door" doctrine.

Finally, we note that in cross-examining the officer, the defense itself had already introduced essentially the same evidence about which appellant now complains. As the Court of Appeals stated in *Hillard v. State*, 286 Md. 145, 156, 406 A.2d 415 (1979), "[T]he admission of improper evidence cannot be used as grounds for reversal where the defendant gives testimony on direct examination that establishes the same facts as those to which he objects." *See also Ball v. State*, 347 Md. 156, 204–05, 699 A.2d 1170 (1997), *cert. denied*, 522 U.S. 1082, 118 S.Ct. 866, 139 L.Ed.2d 763 (1998) (Appellant "introduced at sentencing substantially the same evidence about which he now complains.... For this reason as well, Appellant's claim must fail."). For all of these reasons, we hold that the court did not abuse its discretion in admitting Sergeant Pellegrini's testimony that Bailey was "eliminated as a suspect."

### State's Closing Argument

 Appellant's second argument on appeal is that "the trial court erred in allowing the State to comment that appellant's silence at the time he was apprehended showed consciousness of guilt." Specifically, appellant challenges the following portion of the State's closing argument:

And when [the police] found [appellant], when they stopped him, he didn't even want to tell them his name. He didn't say what is this for, he wasn't shocked. He knew.

Defense counsel objected to this argument by stating, "Objection. That's not proper." The court responded, "Argu-

---

offered for its truth. *See* Maryland Rule 5–801. Rather, Sergeant Bailey was testifying as to his own knowledge, as the investigating officer, of Bailey's status in the investigation.

ment, counsel. Overruled." After the jury retired, defense counsel reiterated that he "made an objection based on the argument which had to do with [what appellant] said or did not say at the time of his arrest." Counsel added, "The point of the objection is it's alluding to my client not making a denial," which "flies in the face of his Fifth Amendment right ... to remain silent." Counsel then moved for a mistrial. The court pointed out that appellant "might not have been under arrest, he may not have been in custody, may not have been Mirandized. There are all those things to take into consideration before you start talking about the Fifth Amendment." The court further stated, "Plus it's argument. And it has to be egregious, it has to be that higher level for it to be an objection to be sustained at an argument level...." The defense motion for a mistrial was denied.[2]

"The permissible scope of closing argument is a matter left to the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused." *Sowell v. State*, 122 Md.App. 222, 228, 712 A.2d 96 (1998), *aff'd on other grounds*, 353 Md. 713, 728 A.2d 712 (1999) (citing *Hunt v. State*, 321 Md. 387, 435, 583 A.2d 218 (1990), *cert. denied*, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991); *Booth v. State*, 306 Md. 172, 210–11, 507 A.2d 1098 (1986), *vacated in part*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987)). Moreover, "attorneys are afforded great leeway in presenting closing arguments to the jury.... 'The prosecutor is allowed liberal freedom of speech and may make any comment that is warranted by the evidence or inferences reasonably drawn therefrom.'" *Degren v. State*, 352 Md. 400, 428, 722 A.2d 887 (1999) (quoting *Jones*, 310 Md. at 580, 530 A.2d 743) (and cases cited therein).

---

2. Appellant does not appeal from the denial of the motion for mistrial. Therefore, we will not consider defense counsel's arguments in support of that motion. Instead, we will only consider counsel's objection, during the State's closing argument, to the State's comments about appellant's silence.

As to summation, it is, as a general rule, within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence; and such comment or argument is afforded a wide range. Counsel is free to use the testimony most favorable to his side of the argument to the jury, and the evidence may be examined, collated, sifted and treated in his own way. Moreover, if counsel does not make any statement of fact not fairly deducible from the evidence his argument is not improper, although the inferences discussed are illogical and erroneous. Generally, counsel has the right to make any comment or argument that is warranted by the evidence proved or inferences therefrom; . . . .

While arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments of opposing counsel, generally speaking, liberal freedom of speech should be allowed. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined—no well-defined bounds beyond which the eloquence of an advocate shall not soar. He may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. He may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions.

*Wilhelm v. State,* 272 Md. 404, 412, 326 A.2d 707 (1974) (citations omitted).

Thus, it is well settled in Maryland that, during closing argument, the prosecutor may draw reasonable inferences from the evidence before the court and/or the jury. In this case, testimony about appellant's silence was repeatedly elicited by *both* the State and the defense and admitted into evidence without objection. In particular, the State and defense counsel questioned Sergeant Dennis Reinhard, one of the police officers effecting appellant's arrest, about appellant's apprehension and subsequent silence. On direct exami-

nation, the following colloquy ensued between the State and Sergeant Reinhard:

[ASSISTANT STATE'S ATTORNEY]: What happened?

[SGT. REINHARD]: What I can testify to was that a few minutes after saying that every one was in place, the defendant, Mr. Steven Daniel, seated right there, came running out the back door.

Q: And when you say came running out the back door, what do you mean?

A: Like a locomotive.

Q: What happened when you saw him running out the back door?

A: I had taken a position. The house in question, 4556 Pimlico Road, is the second from the end going north before there is a break. There is like a break for vehicles, like an alleyway. So I had actually taken up a position behind cover of a 4 foot stone wall and I was actually one door up adjacent to the house in question.

So, Mr. Daniel I observed, running straight out the back door. He continued making a left or right immediately,— had to run the entire length of the yard because of the fence on both sides and the wall, and made a left turn into the alley and proceeded south maybe 20, 30 yards. I immediately gave chase yelling for him to stop, police. I was in full uniform at the time and he did stop.

Sergeant Reinhard testified that "[i]nstantly, as soon as the chase started[,][a]s soon as I saw him, I started yelling police." Appellant then emerged from the house and "looked [Sergeant Reinhard] square in the eye and continued straight down the alley." By the time the chase was over, "Mr. Daniel was winded and breathing hard."

Sergeant Reinhard further testified on direct examination as follows:

[ASSISTANT STATE'S ATTORNEY]: And then after he was stopped, then what happened?

[SGT. REINHARD]: As soon as the chase started, I immediately called for help, and the other officers came to the back. Mr. Daniel did stop. He never did say a word to me. I asked him if his name was Steven Daniel and he wouldn't say a word. We handcuffed the individual and escorted him to the front of the address. Awaiting the cruising patrol.

Q: When you say he never said a word, you—

A: He never uttered one word.

\* \* \*

Q: Officer, can you tell me how many times did you ask him what his name was?

[DEFENSE COUNSEL]: Objection, leading.

[ASSISTANT STATE'S ATTORNEY]: I said how many times.

THE COURT: Overruled.

[SGT. REINHARD]: Personally, maybe two or three times, that was it.

While cross-examining Sergeant Reinhard, the defense elicited similar testimony regarding appellant's silence:

[DEFENSE COUNSEL]: He never gave you any kind of phony name or false name or anything like that?

[SGT. REINHARD]: Like I said earlier, he never spoke to me.

Q: Never spoke to you at all?

A: No, Sir.

■■■ With no defense objection, the defendant's silence was clearly in evidence in this case. Accordingly, in this appeal, appellant challenges the propriety of the prosecutor's comments about the testimony, rather than the admissibility of the testimony itself. We note in passing that, even if the defense had objected to testimony about appellant's silence, it is not clear that the testimony was improper. Although it is impermissible in Maryland to comment on a defendant's post-arrest silence, the same is not true for pre-arrest silence. *See, e.g., Williams v. State,* 99 Md.App. 711, 716, 639 A.2d 180 (1994),

*aff'd,* 344 Md. 358, 686 A.2d 1096 (1996); *Wills v. State,* 82 Md.App. 669, 678, 573 A.2d 80 (1990). As the trial court recognized, the record is unclear as to whether appellant was under arrest when Sergeant Reinhard asked him his name. Therefore, it is unclear whether appellant's silence was pre-arrest, and thus properly admitted, or post-arrest, and should have been excluded had there been an objection. Regardless, because appellant did not object to testimony about his silence (and indeed elicited such testimony himself), the distinction is moot in this appeal. Testimony about appellant's silence was in evidence; as the State is permitted to argue reasonable inferences from the evidence, the State's comments during closing argument in this case were proper.

## *Harm*

Finally, we note that, even if the court erred in permitting the State to argue during closing that appellant's silence amounted to consciousness of guilt, any such error was harmless beyond a reasonable doubt. *See Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976). In this case, the court instructed the jury that "[a] person's flight immediately after the commission of a crime . . . may be considered by you as evidence of guilt. . . . If you decide there is evidence of flight, you then must decide whether this evidence shows a consciousness of guilt." *See Whittlesey v. State,* 340 Md. 30, 64, 665 A.2d 223 (1995), *cert. denied,* 516 U.S. 1148, 116 S.Ct. 1021, 134 L.Ed.2d 100 (1996) ("It is well settled that evidence of flight is admissible to show awareness of guilt.") (citing *State v. Edison,* 318 Md. 541, 548, 569 A.2d 657 (1990), *Hunt v. State,* 312 Md. 494, 508, 540 A.2d 1125 (1988)); *Huffington v. State,* 295 Md. 1, 16, 452 A.2d 1211 (1982) ("In Maryland, flight from justice has always been deemed indicative of consciousness of guilt.") (citing *Jones v. State,* 242 Md. 323, 327, 219 A.2d 77 (1966); *Davis v. State,* 237 Md. 97, 105, 205 A.2d 254 (1964), *cert. denied,* 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965); *Clay v. State,* 211 Md. 577, 584–85, 128 A.2d 634 (1957)).

The silence at issue in this case occurred immediately after appellant fled from police. If a juror were inclined to draw an inference of guilt from appellant's flight, that juror would not likely draw an inference consistent with innocence as to appellant's silence immediately thereafter, even in the absence of the prosecutor's comments. We hold that, in light of the court's flight instruction, the prosecutor's comments, even if erroneously permitted, were harmless beyond a reasonable doubt.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**