MAGED, ET AL. *v.* THE YELLOW CAB COM-
PANY, ET AL.

[No. 104, September Term, 1964.]

*Decided January 5, 1965.*

*Motion for rehearing filed January 21, 1965, denied January 22, 1965.*

The cause was argued before PRESCOTT, HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Paul F. Due,* with whom was *Alfred F. Walker* on the brief, for appellants.

*Frederick J. Green, Jr.,* with whom were *Alva P. Weaver, III* and *Lord, Whip, Coughlan & Green* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

In this tort action by Frieda Maged (plaintiff or passenger) against the Yellow Cab Company (defendant or cab company) for injuries sustained by her when the cab in which she was riding allegedly made a sudden stop, the questions on appeal concern the admissibility of evidence and the restricting of cross-examination of a witness. Isaac Maged, the husband of the passenger, was also a party plaintiff, and Lester C. Spittel, the cab driver, was also a party defendant. From a judgment for costs entered on the jury verdict for the defendants, the plaintiffs appealed.

The passenger entered the cab on Howard Street in Baltimore City and directed the driver to take her to a dress shop on North Charles Street. According to the passenger, as the cab reached its destination, the driver had difficulty bringing it to a stop. When he stopped, the stop was so sudden that she was thrown off the rear seat against the side of the cab and

onto the floor. As a result of the occurrence, she injured her elbow and forearm. According to the cab driver, as he approached the dress shop, he observed a motor vehicle coming out of a parking lot near the shop and slowed down as a precautionary measure, but kept on going when the other vehicle yielded the right of way. At no time did he have difficulty stopping, and he denied bringing the cab to a sudden stop.

The day after the occurrence, the claim manager of the cab company made a memorandum of a telephone conversation between the plaintiff and an employee in the company claim department in which it was recorded that the passenger had said that the cab made a sudden stop because of a "car either going [in] or coming out of [the] parking lot." The next day the head of the claim department visited the passenger at her home and obtained a statement signed (but not read) by her affirming that the cab "either made a sudden stop or a fast start" to avoid striking a motor vehicle coming out of the parking lot.

Prior to the trial, the defendants, in answer to interrogatories served on the cab company and driver by the plaintiffs, stated that an "oral report only" had been made by an employee of the cab company in the ordinary course of business with respect to the occurrence; that it had "no other knowledge * * * [of the] alleged accident" other than that the "passenger was paying her fare when * * * the driver was advised that [she] had bruised her arm" whereupon "the driver offered to render assistance"; and that the cab driver had made an "oral report" of the injury sustained by the passenger.

At the trial of the case, the plaintiff, although readily admitting that other portions of the written statement she had given the claim manager were correct, categorically denied, on both direct and cross-examination, that she had told the claim manager anything about a motor vehicle coming out of a parking lot. While still on cross-examination, the plaintiff admitted making a prior claim against the cab company and being paid for a shoe cut as the result of stepping on broken glass inside a cab. She denied, however, having made a complaint to the cab company about another sudden stop several years before for which no claim was made because there had been no injury.

Also at the trial, the cab driver, contrary to the answers to

the interrogatories, testified on direct examination, that he had made a report in writing of the passenger's complaint to him. While he testified to this, there was an intimation that he may have been mistaken. Although inquiry was made as to the whereabouts of the written report if there was one, it was not produced. Instead counsel for the company suggested that the passenger should seek discovery under the applicable rules of procedure, but this was not done.

After the passenger and cab driver had testified, the cab company called its claim manager. Over objection, the court, despite the fact that the defendants, in answer to the interrogatories, had denied the existence of written records made in the ordinary course of business, permitted the claim manager to produce the memorandum he had made of the telephone conversation between the plaintiff and a company employee. The court also allowed the cab company, over objection, to introduce evidence from its claim files tending to impeach the testimony of the plaintiff denying that she had ever made a previous complaint based on a sudden stop.

When the claim manager was cross-examined as to whether he had received any information, either verbal or in writing, from the cab driver before obtaining the written statement from the passenger, he replied that he did not recall. Then, when he was asked whether he remembered that the cab driver, while testifying, had denied that the incident occurred in the manner described in plaintiff's statement, counsel for the cab company objected and the objection was sustained. When asked if he remembered receiving either a verbal or written report from the driver respecting the complaint of the passenger, the witness replied, after an objection to the question was overruled, that he did not recall a report from the driver "coming through in the ordinary course of business." Except for inquiries as to what was ordinarily done with reports received in the ordinary course of business, that ended the cross-examination.

In essence, it is contended on appeal that the trial court erred: (i) when it permitted the cab company to produce and use the memorandum of the telephone conversation between the plaintiff and a claim department employee and did not require the company to disclose the written report of the cab

driver; (ii) when it admitted evidence of a previous complaint the plaintiff had made concerning another sudden stop for which no claim was made; and (iii) when it refused to allow unrestricted cross-examination of the claim manager with regard to inconsistencies between the testimony of the cab driver and the answers to the interrogatories, on the one hand, and the statement taken by the claim manager from the passenger, on the other hand.

(i)

The first contention of the plaintiff, and the one on which the most emphasis was placed, is that it was error for the trial court, in view of the answers to the interrogatories, to permit the production and use of the memorandum of the telephone conversation as evidence. We agree. The record, however, shows that its use was not so prejudicial as to require a reversal.

The memorandum, which for the purposes of this case we assume was a record made in the ordinary course of business, should have been disclosed in answer to the interrogatories and its admission into evidence was improper. Although it is said that the standard form of interrogatory (seeking statements or reports made by an employee in the ordinary course of business[1]) has generally been interpreted by some members of the legal profession as requiring only the reports of drivers with respect to the manner in which the occurrence took place, we think the interrogatory is broad enough, when used in a case such as this, to require the disclosure of all statements and records pertaining to the occurrence made in the ordinary course of business (with certain exceptions not here present). Ordinarily, statements in regard to an accident, regardless of who made them, should not be admitted in evidence when the existence of any such statement has been denied. Even so, since the statement of the plaintiff to the claim manager that the "cab either made a sudden stop or a fast start" to avoid a car coming out of a parking lot—which under the ruling laid down in *Sun Cab Co. v. Cusick*, 209 Md. 354, 121 A. 2d 188 (1956),

---

1. See Suggested Form No. 15 in the footnotes to Discovery Rule 417 h on p. 166 of Vol. 9B of the Maryland Code.

was properly admissible for purposes of impeachment — is practically the same as the statement recorded in the memorandum to the effect that the cab made a sudden stop to avoid "a car either going [in] or coming out of [the] parking lot," there was in this case no showing of prejudice on this point, and we so hold.

Although the passenger further contends that the court should have required the cab company to disclose the written report (if in fact there was one) the driver made to his employer, the failure to do so was likewise not prejudicial under the circumstances. All that the record shows is that the cab driver said he made a written report and that counsel for the plaintiff inquired as to its whereabouts and demanded its production. Counsel for the cab company, however, ignored the request, and the court did not require its discovery. When the written report was not forthcoming, counsel for the plaintiffs, instead of demanding that the witness not be allowed to give further testimony, that he be temporarily withdrawn until the report was produced, or, if need be, that the case be postponed, proceeded to further examine the witness as to what was in the report. The plaintiff may thereby have waived her right to discovery of the written report. In any event, if a written report was available, its nondisclosure has not been shown to have been prejudicial. The cab driver testified that he slowed down to avoid a motor vehicle coming out of the parking lot, and this was contradictory of the plaintiff's statement that he came to a sudden stop or made a fast start. It was for the jury to decide the weight of the evidence given by the cab driver and the passenger.

In ruling that the use of the memorandum of the telephone conversation and the failure to make discovery of the alleged written report of the driver was not prejudicial in the case at bar, we should not be understood as approving the practice of answering interrogatories in an evasive manner and then producing evidence to the contrary at the time of trial. See *Barnes v. Lednum,* 197 Md. 398, 406, 79 A. 2d 520 (1951).

(ii)

The plaintiff, relying on *Kantor v. Ash,* 215 Md. 285, 137 A. 2d 661 (1958), contends that it was error for the trial court

to admit evidence to show that on a prior occasion she had, contrary to her testimony on cross-examination, complained about a sudden stop made by another Yellow cab. While we shall assume for the purposes of this case that the cross-examination of the plaintiff as to previous claims she had made against the company and the admission in evidence of the claim file were irrelevant and immaterial and therefore improper, we think it is apparent that neither was prejudicial. The admission therefore of such evidence would not constitute a ground for reversal. *Kennedy v. Crouch,* 191 Md. 580, 62 A. 2d 582 (1948). As we see it, the admission of the claim file was harmless in view of the fact that it only disclosed that although a complaint had been made, no claim was made since no injury was sustained and therefore no damages were ever paid.

As the cases collected in the annotation in 69 A.L.R. 2d 593, 611, show, the propriety of admitting evidence of previous claims and actions depends on the facts in each case and generally turns on whether the evidence, if irrelevant or immaterial, is prejudicial. For cases holding that prejudice resulted from the admission of wholly collateral evidence of prior claims or injuries, see *Kantor v. Ash, supra,* and *Salisbury Coca-Cola Bottling Co. v. Lowe,* 176 Md. 230, 4 A. 2d 440 (1939). See also *Gordon v. Checker Taxi Co.,* 79 N. E. 2d 632 (Ill. 1948), where cross-examination of plaintiff as to a prior accident, although proper, was held to be prejudicial when additional proof was not offered. For cases holding that proof of prior claims was proper, see *Mintz v. Premier Cab Ass'n.,* 127 F. 2d 744 (D. C. Cir. 1942), and *Evans v. Greyhound,* 200 A. 2d 194 (D. C. Ct. App. 1964). In the *Mintz* case, it was held that the line of questioning as to prior claims was admissible and that it was a jury question as to whether the plaintiff was merely unlucky or claim-minded. Since there was no showing of prejudice in the case at bar, the error, if any, was harmless. Cf. *Hughes v. Averza,* 223 Md. 12, 161 A. 2d 671 (1960).

(iii)

The final contention of the plaintiff that the court was in error when it refused to allow unrestricted cross-examination of the claim manager also lacks substantial merit.

As we read the record, the plaintiff was not unduly restricted in her cross-examination of the claim manager. The only objection sustained was an inquiry as to whether he recalled that the cab driver had denied that the incident had occurred in the manner described in the passenger's statement. Certainly the jury was well aware by the time the claim manager was called as the last witness that the out-coming vehicle had yielded the right of way to the cab; that the cab had *slowed* down to avoid a collision, according to the driver; or that the cab either made a *sudden stop* or a *fast start,* according to the passenger. Any further testimony as to the alleged inconsistencies would only have been cumulative.

*Judgment affirmed; appellants to pay the costs.*