511 A.2d 73

**Albert W. HAIRSTON**

v.

**STATE of Maryland.**

**No. 1610, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

July 8, 1986.

Certiorari Denied Nov. 5, 1986.

232

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and William McCullom, Asst. State's Atty. for Baltimore City on brief), Baltimore, for appellee.

Submitted Before WEANT and BISHOP, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

BISHOP, Judge.

After a jury trial in the Circuit Court for Baltimore City appellant, Albert W. Hairston, was convicted of assault and carrying a weapon with intent to injure and was sentenced to ten years incarceration. Appellant asks:

I. Did the trial court err in permitting the prosecutor to impeach appellant's testimony with a prior conviction for manslaughter?

II. Did the trial court err in permitting the prosecutor to engage in an improper opening statement?

III. Did the trial court err in permitting the prosecutor to state in argument that "under the law, the witnesses that testify for the State are assumed to be telling the truth"?

IV. Did the jury return inconsistent verdicts?

## FACTS

Appellant shared a home with William Brown and Brown's wife. Appellant paid the rent while Brown and his wife paid the remaining expenses such as utilities, insurance, and food costs. According to Brown, on February 1, 1985, without provocation and for no apparent reason, appellant stabbed him in the chest with a butcher knife.

Appellant testified that he had been drinking beer, whiskey and gin on the day of the stabbing. Appellant also testified that Brown had given him a half pint of gin that day so that appellant would fall asleep and Brown would be able to take his wallet which contained sixty-three dollars. Brown's denial of these allegations was supported by his wife's testimony.

Appellant testified that he had no recollection of stabbing Brown. He recalled only that Brown was screaming at him and the next thing he remembered was waking up in jail. Additional facts will be supplied in the analysis which follows.

## I.

### *Manslaughter as Infamous Crime*

■ Appellant claims that the trial court erred in permitting the prosecutor to impeach his credibility on the basis of a prior conviction for manslaughter. Only "infamous crimes" may be used for impeachment purposes, and manslaughter, he argues, is not an infamous crime.[1]

The State used appellant's 1971 conviction of manslaughter in Detroit, Michigan, to impeach appellant's credibility at trial. Md.Cts. & Jud.Proc.Code Ann. § 10–905 (1984 Repl. Vol.) allows the admission into evidence of "infamous" crimes, as defined by Maryland law, for purposes of impeachment. We must therefore determine whether appellant's 1971 Michigan manslaughter conviction constitutes an "infamous" crime under § 10–905.

■ In *Watson v. State,* 68 Md.App. 168, 510 A.2d 1094 (1986), opinion issued July 7, 1986, we set out the formula for

---

1. Of course, a crime need not be "infamous" to be used to impeach. While a prior conviction for an "infamous" crime is always admissible for impeachment purposes, prior conviction for "non-infamous" crimes may be admissible at the discretion of the trial judge who must consider certain factors in determining the relevance of the conviction to the witness's credibility. *Duckett v. State,* 61 Md.App. 151, 154, 485 A.2d 691 (1985).

determining whether a particular foreign conviction is an infamous crime within the meaning of § 10–905. It is a three step process analogous to the analysis of foreign convictions under the Maryland enhanced punishment statute. *Id.* 68 Md.App. at 172–174, 510 A.2d at 1096–1098. First, we determine which Maryland offense is the counterpart of the foreign offense. Second, we decide whether the counterpart Maryland offense is an infamous crime. If it is, we must examine the foreign offense to determine if its elements are sufficiently limited to those elements by which the crime is established in this State. If so, the foreign offense is an infamous crime for purposes of § 10–905. *Id.* 68 Md.App. at 173–174, 510 A.2d at 1097–1098.

In Michigan, manslaughter is a felony and has been defined as "the unlawful killing of another without malice, express or implied. *People v. Clark,* [5 Mich.App. 672, 147 N.W.2d 704 (1967) ]." *People v. Alexander,* 33 Mich.App. 704, 190 N.W.2d 319 (1971). In Maryland, manslaughter is "the unlawful and felonious killing of another without malice aforethought, either express or implied. . . ." *Rolfes v. State,* 10 Md.App. 204, 206–07, 268 A.2d 795 (1970) quoting *Neusbaum v. State,* 156 Md. 149, 155, 143 A. 872 (1928). Therefore, Maryland manslaughter is the counterpart to manslaughter as it existed in Michigan in 1971.

 The next step in the *Watson* analysis requires us to decide whether Maryland manslaughter is an infamous crime. Because manslaughter is a felony, *State v. Gibson,* 4 Md.App. 236, 241, 242 A.2d 575 (1968), *aff'd,* 254 Md. 399, 254 A.2d 691 (1969), it is necessarily an infamous crime. *Watson,* 68 Md.App. at 179, 510 A.2d at 1100; *Gorman v. State,* 67 Md.App. 398, 410, 507 A.2d 1160 (1986).

Because the definitions of manslaughter in both Maryland and Michigan are substantively identical, any version of the Michigan offense would be infamous. The manslaughter conviction was properly admitted for impeachment of appellant's testimony.

## II. & III.

### *Improper Comments in Opening Statement and Closing Argument*

In issues II and III appellant challenges comments made by the prosecutor in both his opening statement and closing argument. The State argues that appellant has failed to preserve the issue because in both instances counsel merely objected to the statement without asking for a curative instruction or moving for a mistrial. We disagree.

The State relies on *Feeney v. Dolan,* 35 Md.App. 538, 553, 371 A.2d 679 *cert. denied,* 280 Md. 730 (1977) and *Dorsey Brothers, Inc. v. Anderson,* 264 Md. 446, 455, 287 A.2d 270 (1972) to support the "well established" rule that "mere objection to closing argument is insufficient to preserve the issue for appellate review." We find this statement only to be half true. Where an objection to opening or closing argument is *sustained,* we agree that there is nothing for this Court to review unless a request for specific relief, such as a motion for a mistrial, to strike, or for further cautionary instruction is made. *See Blandon v. State,* 60 Md.App. 582, 586, 483 A.2d 1320 (1984), *aff'd,* 304 Md. 316, 498 A.2d 1195 (1985); *Williams v. State,* 4 Md.App. 558, 560, 244 A.2d 476 (1968), *cert. denied,* 252 Md. 733 (1969); Rule 1085.

■ However, we do not agree with the State that this rule is applicable in a case such as this one where the objection to argument is *overruled* by the trial court. We recognize that in *Feeney, Dorsey Brothers* and *Tully v. Dasher,* 250 Md. 424, 440, 244 A.2d 207 (1968), the case upon which *Dorsey* relies, the rule was applied where objections to argument were overruled. These cases, however, can be traced back to *Brinard v. Denzik,* 226 Md. 287, 290–92, 173 A.2d 203 (1961), upon which *Tully* relies as its authority. In *Brinard* the objection to argument was sustained. The line of cases applying the preservation rule in the context of objections to argument which were overruled, culminating in *Feeney,* therefore, evolved from the

unexplained expansion of *Brinard* in the *Tully* case. Further, we note that *Feeney* and its predecessors are all civil cases and that the preservation rule requiring something beyond an objection when the objection is overruled, has not been applied in a criminal case. In light of its lineage, and because ours is a criminal case, we decline to follow *Feeney's* preservation rule.

This conclusion is supported by *Blandon,* a criminal case, which is our most recent treatment of this issue. In that case, two objections to closing argument were made; the first was overruled and the second was sustained. 60 Md.App. at 585, 483 A.2d 1320. No motion for further relief was made as to either objection. *Id.* This Court addressed the overruled objection on its merits, but found nothing to review as to the sustained objection because no further relief was requested. 60 Md.App. at 585–86, 483 A.2d 1320. Implicitly, this analysis recognized that nothing further is needed to preserve the issue for appellate review where an objection to counsel's argument is overruled. Only where an objection to argument is sustained need specific relief be requested to preserve the issue for review. Since the objections to argument in the case *sub judice* were overruled, the issues now raised were properly preserved for appeal.

## A.

### Opening Statement

During his opening statement, the prosecutor stated:

MR. McCULLOM: The State is saying to you that a crime was committed. My job is to represent the State and I am the Assistant State's Attorney. I work for the State's Attorney's Office and the State's Attorney's Office is a position created by the State constitution for the purpose of prosecuting that which we call crime. Crime not just against the person who is injured, but crime against the community because in each and every charge, there is in essence a crime against everyone. When someone is

hurt, when someone is the victim of theft, everyone is hurt.

MR. EPSTEIN: I object. This is argumentative.

THE COURT: Overruled.

MR. McCULLOM: That is why you are here. That is why I address this issue so you, members of the community can hear from members of the community to determine whether or not another member of the community has violated the law.

Appellant argues that this "harangue" was an "impassioned appeal to the fears of the jurors." This contention is without merit.

In *Wilhelm v. State*, 272 Md. 404, 411–12, 326 A.2d 707 (1974) the Court of Appeals explained:

> The primary purpose or office of an opening statement in a criminal prosecution is to apprise with reasonable succinctness the trier of facts of the questions involved and what the State or the defense expects to prove so as to prepare the trier of facts for the evidence to be adduced. While the prosecutor should be allowed a reasonable latitude in his opening statement, he should be confined to a statement based on facts that can be proved and his opening statement should not include references to facts which are plainly inadmissible and which he cannot or will not be permitted to prove, or which he in good faith does not expect to prove. An opening statement by counsel is not evidence and generally has no binding force or effect. To secure a reversal based on an opening statement the accused is usually required to establish bad faith on the part of the prosecutor in the statement of what the prosecutor expects to prove or establish substantial prejudice resulting therefrom.

■ Here the prosecutor was merely giving the jurors an introduction to the criminal justice system and explaining their role in the trial. Appellant has failed to establish any bad faith on the part of the prosecutor or substantial prejudice to appellant resulting from the statement. The

trial court did not err in overruling appellant's objection to the opening statement.

## B.

### Closing Argument

The prosecutor made the following remarks in closing: "MR. McCULLOM: The State or the Community has the obligation to prove certain facts beyond a reasonable doubt. Each crime has elements. It is the State's obligation to bring facts into this courtroom, addressing those elements, facts, which show an injury, facts which show how an injury occurred, facts which show the possibility of a specific criminal intent and all of these facts were presented to you. The issue is do you believe the people who presented the knowledge of the facts to you, Mr. Brown, Mrs. Brown, Officer Lipman and Paramedic Bayton. Under the law, the witnesses that testify for the State are assumed to be telling the truth. They don't walk into this courtroom—

MR. EPSTEIN: Your Honor, I object to that.

THE COURT: Overruled.

MR. McCULLOM:—with a negative presumption that they are lying. They are people just like you and me. People who live in different parts of the city and they come forward to tell how they were wronged by being stabbed. Mr. Brown told you about that and he gave you, ladies and gentlemen of the jury, all the information necessary to meet all the various elements of the crime and to satisfy the element of those crimes. Was there any reason not to believe Mr. Brown? Do you have any doubts due to the credibility of Mr. Brown? If you do, where does that doubt come from? Is it a reasonable doubt? Is the doubt overcome by something which you have heard? There is nothing here that would indicate that Mr. Brown was telling anything but the truth, except

for some allegations by Mr. Hairston. The police officer said to you when he was on the witness stand that Mr. Hairston was in control and there is no doubt at all that Mr. Brown was injured and there was no doubt at all, reasonable or otherwise, that this was the weapon used and there is no doubt that he was punctured in the lung with that knife. There is no reasonable doubt that he was injured in such a way."

■ Appellant argues that "under the law, witnesses that testify for the State are assumed to be telling the truth," is improper argument. We agree. However, we hold that the court's error in permitting the statement was harmless beyond a reasonable doubt. *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976).

■ Appellant argues that the court's action constituted reversible error. He relies exclusively on out-of-state cases holding misstatements of law *by the trial judge* to be erroneous. These cases are not only inapposite, they are not binding on this Court. In Maryland, counsel are customarily given wide latitude in closing argument. *Samson v. State*, 27 Md.App. 326, 336, 341 A.2d 817 (1975). Unless it appears likely that the jury was actually misled or likely to have been misled, or influenced to the prejudice of the accused by the remarks of counsel, reversal on this ground will not be justified. *Wilhelm*, 272 Md. at 415–16, 326 A.2d 707. Here the trial court properly instructed the jury on the credibility of the witnesses and also informed the jury that the argument of counsel is not evidence and that the only evidence to be considered is that produced through the testimony of witnesses on the stand, exhibits, and stipulations which have been admitted. Because the judge's overall instruction clearly stated the law as to the credibility of the witnesses and explained that counsel's arguments are not evidence, the jury was not likely to have been misled or influenced to the prejudice of the accused by this one

remark of counsel. The overruling of appellant's objection, though error, was harmless beyond a reasonable doubt.

## IV.

### *Inconsistent Verdicts*

Appellant was charged with assault with intent to murder, assault, and carrying a weapon openly with intent to injure. After appellant presented a defense of voluntary intoxication, the jury found him guilty of assault and carrying a weapon openly with intent to injure. Appellant argues that, since it convicted him of simple assault, the jury necessarily believed that he was unable to form the specific intent to murder because of his voluntary intoxication. Because carrying a weapon openly with intent to injure also contains an element of specific intent, appellant argues that his intoxication also prevented a conviction for that offense. He asks for reversal of the weapons conviction based on *Jenkins v. State,* 59 Md.App. 612, 621, 477 A.2d 791 *cert. granted,* 302 Md. 46, 485 A.2d 269 (1984) which states that a trial court has a duty not to accept inconsistent verdicts.

*Jenkins* also states that "failure to request such action by the trial court may also result in a waiver under Md. Rule 1085...." *Id.* Because appellant did not object to the verdict below or ask the court to direct the jury to correct the verdict, he has waived the issue. Rule 1085. Even if preserved, we do not find the verdict necessarily inconsistent, since the jury was not required to believe appellant's voluntary intoxication defense in order to acquit him of assault with intent to murder and may have believed that appellant did not form the specific intent to murder for some reason other than intoxication.

We discern no reversible error in the actions of the trial court.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.