932 A.2d 1243

Richard Lynn BITTINGER

v.

CSX TRANSPORTATION INC.

No. 1090, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Sept. 26, 2007.

264

266

John E. Basilone (Willard J. Moody, Jr., Moody, Strople, Kloeppel, Basilone & Higginbotham, Inc., on the brief), Portsmouth, VA; James E. Walsh, on the brief, Cumberland, MD, for appellant.

Douglas F. Murray (Amy E. Askew, Whiteford, Taylor & Preston, LLP, on the brief), Baltimore, MD, for appellee.

Panel: MURPHY, C.J., KRAUSER and MEREDITH, JJ.

KRAUSER, J.

Appellant, Richard Lynn Bittinger, an employee of appellee CSX Transportation, Inc., ("CSX"), a railroad company, suffered a back injury while attempting to throw a railway switch to permit a train to change tracks. To obtain compensation for his injury, he filed suit in the Circuit Court for Allegany

County against CSX under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60. That suit ended in a jury verdict in favor of CSX.

On appeal, Bittinger presents three issues:

I. Whether the circuit court erred in admitting evidence of prior FELA claims made by Bittinger for similar injuries and that he was compensated for those injuries by CSX.

II. Whether the circuit court erred in refusing several of Bittinger's requested jury instructions and his proposed verdict form.

III. Whether CSX engaged in improper argument and misstated the law applicable to the case.

## BACKGROUND

██ Prior to the injury, which is the subject of this litigation, appellant sustained three back injuries while working for CSX: Those injuries occurred in 1984, 1994, and 1999. After each injury, Bittinger filed a claim under the Federal Employers' Liability Act ("FELA"). That act allows railroad employees to pursue claims against their employers for injuries caused "in whole or in part" by the railroads' negligence. *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 132–33, 858 A.2d 1025 (2004). In each instance, appellant's claim was settled and, pursuant to that settlement, he received compensation. After appellant's 1999 injury, his treating physician released him to return to work at CSX, and he did.

About a year later, on June 23, 2003, appellant purportedly suffered the back injury that is the subject of this litigation. At the time, he was working as a conductor for CSX at its railroad yard in Beryl, West Virginia. The yard had a number of "switches" that CSX employees were to "throw" to permit trains to change from one track to another. The particular switch of interest in this case was the "No. 9 switch"; it was the main switch in the yard and thus the most frequently used. A standard railroad switch, the No. 9 consisted of a ball weighing about 30 pounds and a lever; it required manual operation. When the switch was thrown

from one side to the other, the lever traveled in a 180 degree arc.

Mud, sand and rust were commonly found in the switches and witnesses could not recall a time when there was enough mud in a switch to cause it to "hang up" in the middle of a throw, or otherwise prevent the throwing of the switch. Moreover, the switches were routinely inspected by CSX employees for larger items such as rocks and sticks that might affect the switches' operation.

The track in Beryl Yard, according to CSX employee Michael E. Dier, was in an area which, because it was "low" lying, had a drainage problem. To alleviate this condition, he installed, before appellant was injured, four drains and a pipe underneath the track in the vicinity of the No. 9 switch and "surfaced the track with a tamper to raise it up." [1] But those efforts failed to completely rectify the problem.

On June 23, 2003, the day of the accident, appellant was working at the yard with fellow crew members Ronald Yutzy and Tom Maloney. At some point, Yutzy threw the No. 9 switch. It was "hard to throw," as were all the other switches in the yard that morning because of what he described as a "lack of maintenance." The No. 9 switch was usually cleaned and lubricated with graphite every 14 days, but had not been serviced, according to Merle Lowery, the track operator, in the 14 days leading up to the June 23, 2003 incident. Moreover, Yutzy testified that there was "mud, sand and rust" on the switches that day. Although Yutzy found the No. 9 switch "hard to throw" that morning, he completed the throw and did not alert appellant or, it appears, anyone else that he had had a problem with the switch.

Appellant had not until that day had any difficulty throwing the No. 9. But that morning, after observing that mud had been pumped into the No. 9 switch, he nonetheless attempted to throw it. When he did, it stopped suddenly in mid-arc; at which time he felt "a sharp pain" running from his back down

---

1. A "tamper" is not defined in the record.

to his leg. He then "fell to the ground." Able to contact Yutzy by radio, he told Yutzy what had happened and that he had hurt his back.

Yutzy returned to the site of the No. 9 switch, where he completed the "throw," which appellant had begun, without any significant trouble. He did, however, inform Merle Lowery that the "switches were hard to throw . . ." That prompted Lowery to clean and graphite the No. 9 switch. When Yutzy later attempted to throw the switch, he found it, in his words, "a lot easier" to throw. The next day, appellant saw a doctor and called his supervisor, Steven Vinci. They filled out an accident report together. In that report, there was no mention of mud or excessive sand in the No. 9 switch.

On July 2, 2003, appellant's treating physician, Patrick Ireland, M.D., recommended an MRI scan of appellant's lumbar spine. The MRI showed a herniated disc. On September 20, 2004, appellant had back surgery; after which he wore a back brace 24 hours a day for five months from September, 2004 through February, 2004.

On December 1, 2004, appellant brought an action in the circuit court against CSX alleging both that CSX had negligently failed to provide him with a reasonably safe place to work under the FELA and, without specific references, had violated the federal Track Safety Standards, 49 C.F.R. Part 213 *et seq.* Appellant amended his complaint by adding the claim that, "starting on or about March 12, 2002, and continuing thereafter" until his injuries on June 23, 2003, CSX "negligently and carelessly approved and assigned [him] to work for which he was not physically suited, which . . . caused or contributed to" his June 23, 2003 injuries.

Before trial, appellant filed a motion in limine to exclude any mention, during trial, of his prior FELA claims against CSX and the amounts paid to him in compensation for those claims. The court denied that motion, stating that the admissible evidence would be "limited to showing prior back injury and that those claims have been resolved."

## DISCUSSION

### I.

Appellant argues that the circuit court erred in denying his motion in limine and in permitting CSX to cross-examine him about his prior FELA claims and that he received compensation for those claims. Appellant's motion, which was among many in-limine motions that he filed in this case, requested the exclusion of the FELA claims that he had made for back injuries he sustained in 1984, 1994, and 1999. The circuit court denied that motion, declaring that CSX could introduce evidence that the claims were made and that appellant was compensated for them but not the amounts of compensation he received for each claim. Pursuant to that ruling, CSX was permitted to cross-examine appellant as follows:

COUNSEL: Mr. Bittinger, you brought a claim against the railroad for the 1984 back injury, correct?

. . . .

APPELLANT: Yes, sir.

. . . .

COUNSEL: And okay, that claim, on that claim you received compensation and that claim was settled and resolved, correct?

APPELLANT: That claim was resolved.

COUNSEL: Okay, and you also brought a claim against the railroad for your 1994 back injury, correct?

APPELLANT: Correct.

COUNSEL: And you received compensation on that claim and that claim was settled and resolved.

APPELLANT: That claim was resolved.

COUNSEL: And indeed you even brought a claim against the railroad for your 1999 back injury to which you said on your incident report that no one was at fault. And on that claim you received compensation and that claim was settled and resolved.

APPELLANT: That claim was resolved.

COUNSEL: Okay, so this is the fourth claim you have brought against C.S.X. claiming injuries to your back, is it not?

APPELLANT: That would be correct.

. . . .

### Standard of Review

■ Before addressing the merits of appellant's claims, we must first consider appellant's curious claim as to the proper standard of review we should apply in reviewing his contention. Although it is "well settled" in Maryland that "the admission of evidence is committed to the considerable and sound discretion of the trial court" and that such an admission will not be disturbed in the absence of an abuse, *Dupree v. State*, 352 Md. 314, 324, 722 A.2d 52 (1998) (citations omitted), appellant nonetheless suggests that we should apply a *de novo* standard of review. For that proposition, he cites two cases: *Zografos v. Mayor and City Council of Baltimore*, 165 Md. App. 80, 884 A.2d 770 (2005) and *McCormack v. Board of Educ. of Baltimore County*, 158 Md.App. 292, 857 A.2d 159 (2004).

■ Although appellant is correct in his assertion that we did apply a *de novo* standard of review to the question of admissibility in those two cases, we did so only because in each case the circuit court admitted the evidence in dispute based on an erroneous interpretation of a statute, and we hardly need to point out to counsel that interpreting a statute is a question of law and that such questions require a *de novo* review. *See Maryland–National Capital Park and Planning Com'n v. Anderson*, 395 Md. 172, 181, 909 A.2d 694 (2006). In contrast, here, the circuit court did not base its decision on an interpretation of a statute. It admitted the evidence in question as an exercise of its discretion, and as such, that exercise, as noted earlier, is only reviewable for abuse.

### Claims

■ Appellant admits that evidence of his prior inquiries was relevant to the question of damages, but he maintains that

evidence of his prior claims for those injuries and that he received compensation was not. We disagree. "[T]he propriety of admitting evidence of previous claims and actions depends on the facts, in each case and generally turns on whether the evidence, if irrelevant or immaterial, is prejudicial." *Maged v. Yellow Cab Company*, 237 Md. 340, 347, 206 A.2d 257 (1965). Here the evidence was relevant and not unfairly prejudicial.

Indeed, it was relevant to the issues of damages. As CSX notes in its brief, "[t]hat [a]ppellant was previously compensated for his three prior back injuries was relevant with respect to the extent, if any, to which he could have been entitled to recover from CSX for the latest injury." In the absence of such evidence, the jury might have assumed, as CSX feared, that appellant had never received recompense from CSX for his prior work-related injuries and therefore been understandably pre-disposed to fully compensate him for all his CSX work-related injuries, past and present. CSX maintains, and we do not disagree, that it was therefore important for the jury to know that those claims had been satisfied.[2]

Nor was the evidence of appellant's prior claims unfairly prejudicial. Appellant, of course, contends otherwise. He maintains that the admission of this evidence was unfairly prejudicial because it might have led the jury to believe that appellant "is one who files suit at the drop of a hat" and that, if he received money from CSX for his prior claims, he did not need any further compensation. Moreover, the very word "compensation," he maintains, might have led the jury to believe that he received workers' compensation payments for his injury, and that, if it found in his favor, he would be, in effect, receiving a double recovery.

■ Appellant cites no facts in the record nor any case law supporting these highly speculative claims. Indeed, as CSX points out, there was no mention of workers' compensation

---

2. This of course could also have been accomplished by a jury instruction, but no such instruction was requested by either side.

during trial and the jury was properly instructed as to damages. Because the jury is presumed to have understood and followed those instructions, *see Patras v. Syphax*, 166 Md.App. 67, 77, 887 A.2d 84 (2005) (citations omitted), and there is nothing in the record to suggest that it did not, we find no merit to these suppositions.

However, relying principally on *Lai v. Sagle*, 373 Md. 306, 818 A.2d 237 (2003), and *Smallwood v. Bradford*, 352 Md. 8, 720 A.2d 586 (1998), appellant maintains that we need not speculate as to what the jury might have done because the admission of such evidence is *ipso facto* prejudicial. But the applicability of both cases does not withstand analysis.

In *Lai*, a medical malpractice case, the plaintiff's counsel, in her opening statement, told the jury that Dr. Lai had been sued five times for malpractice in another state. *Lai*, 373 Md. at 310, 818 A.2d 237. Dr. Lai's counsel objected and moved for a mistrial. *Id.* at 310–11, 818 A.2d 237. That motion was denied and the jury ultimately found Dr. Lai guilty of negligence. *Id.* at 312–13, 818 A.2d 237.

Although this Court affirmed that decision, the Court of Appeals reached a different conclusion. *Id.* at 313–14, 818 A.2d 237. It reversed, stating that the "mention by the plaintiff in opening statement in a medical malpractice jury trial of prior malpractice litigation brought by third parties against the defendant doctor is unduly and highly prejudicial and ordinarily shall result, upon proper objection and motion, in a mistrial." *Id.* at 324–25, 818 A.2d 237. After pointing out that "[t]here could be any number of reasons why Dr. Lai was sued, and not all, if any, of them may have been legitimate," *id.* at 322, 818 A.2d 237, it further observed that "similar acts of prior malpractice litigation should be excluded to prevent a jury from concluding that a doctor has a propensity to commit medical malpractice." *Id.* at 323, 818 A.2d 237.

In contrast, appellant, unlike the plaintiff in *Lai*, was not seeking to introduce evidence of previous negligence claims against CSX to establish CSX's propensity to commit negligent acts. Quite the contrary, CSX was seeking to introduce

evidence of appellant's prior FELA claims, not to establish a propensity to commit negligent acts, but because that evidence was relevant to the issue of damages.

*Smallwood* is even less relevant to the case at bar. In Smallwood, after the decedent was killed when his car collided with the defendant's vehicle, the representative of his estate filed a survival action, alleging that the defendant's negligence caused the decedent's death. *Smallwood*, 352 Md. at 11, 720 A.2d 586. At trial, the personal representative sought to introduce evidence and testimony relating to the "pecuniary condition of the decedent's estate," but the trial judge excluded it, stating that it was irrelevant. *Id.* at 13, 26, 720 A.2d 586. After the circuit court entered judgment awarding damages only for funeral expenses, the personal representative appealed, arguing that the evidence was relevant to show "the extent to which [the decedent's] loss of enjoyment of life was increased by his knowledge that he had insufficient assets to pay his Estate's bills . . . ." *Id.*

The Court of Appeals held that the trial court had not abused its discretion in excluding this evidence because it was irrelevant. *Id.* at 27, 720 A.2d 586. "We are unable to discern," it exclaimed, "how that evidence tended to prove the decedent's loss of enjoyment of life or even the extent of the damages attributed thereto." *Id.* Indeed, it is pure conjecture, the Court continued, that the decedent, in the moments before his death, was worried that his creditors would not be paid. *Id.* at 27–28, 720 A.2d 586. While the evidence that the *Smallwood* personal representative sought to introduce was at best speculative, the evidence of appellant's prior claims, for the reasons we have previously outlined, was not. It bore, as we have indicated, directly on the issue of damages.

Still, appellant reminds us, citing Rule 5–408, that "settlements ordinarily are not admissible in evidence." [3] The purpose of Rule 5–408 is to encourage the settlement of

---

**3. RULE 5–408. COMPROMISE AND OFFERS TO COMPROMISE**

(a) The following evidence is not admissible to prove the validity, invalidity, or amount of a civil claim in dispute:

lawsuits by ensuring that parties need not fear that their desire to settle pending litigation and their offers to do so will be construed as admissions. *Sodergren v. Johns Hopkins University Applied Physics Laboratory,* 138 Md.App. 686, 698, 773 A.2d 592 (2001). But that rule is plainly not applicable to the instant case because the evidence at issue concerned previously settled claims and not promises to settle an existing claim.

■ Finally, appellant argues that, because "receipt of collateral source benefits has routinely been deemed inadmissible due to its questionable relevance and the danger of unfair prejudice, confusion of the issues, and misleading the jury," evidence that appellant had made earlier claims against CSX and was compensated for those claims should be excluded for the same reasons. Appellant admits, however, that the receipt of collateral source benefits is a "somewhat different" issue than the admission of prior claims. We emphatically agree.

■ "The collateral source rule permits an injured person to recover the full amount of his or her provable

---

(1) Furnishing or offering or promising to furnish a valuable consideration for the purpose of compromising or attempting to compromise the claim or any other claim;

(2) Accepting or offering to accept such consideration for that purpose; and

(3) Conduct or statements made in compromise negotiations or mediation.

**(b)** This Rule does not require the exclusion of any evidence otherwise obtained merely because it is also presented in the course of compromise negotiations or mediation.

**(c)** Except as otherwise provided by law, evidence of a type specified in section (a) of this Rule is not excluded under this Rule when offered for another purpose, such as proving bias or prejudice of a witness, controverting a defense of laches or limitations, establishing the existence of a "Mary Carter" agreement, or proving an effort to obstruct a criminal investigation or prosecution, but exclusion is required where the sole purpose for offering the evidence is to impeach a party by showing a prior inconsistent statement.

**(d)** When an act giving rise to criminal liability would also result in civil liability, evidence that would be inadmissible in a civil action is also inadmissible in a criminal action based on that act.

damages, 'regardless of the amount of compensation which the person has received for his injuries from sources unrelated to the tortfeasor.' " *Haischer v. CSX Transp., Inc.*, 381 Md. 119, 132, 848 A.2d 620 (2004) (*citing Motor Vehicle Admin. v. Seidel*, 326 Md. 237, 253, 604 A.2d 473 (1992)). Underlying this rule is the principle that "the wrongdoer should not receive a windfall because the plaintiff received a benefit from an independent source," for which, in many instances, he or she has paid. *Id.* That doctrine plainly has no application to the case at bar.

The compensation appellant received was not for the instant claim but for past claims, and it was not from an independent source but from CSX. In other words, the source of the funds was not collateral nor were they received for the injury now claimed by appellant.

## II.

Appellant next argues that the circuit court erred in refusing five jury instructions which he requested: jury instruction No. 22, regarding violation of the federal Track Safety Standards and jury instructions Nos. 15 through 18, regarding CSX's duties under the FELA. It further erred, he claimed, in failing to give the interrogatory in his proposed verdict form [4] regarding instruction No. 22 and by erroneously including language in its charge regarding evidence of appellant's prior claims and compensation.

The trial testimony that precipitated appellant's request for instruction No. 22 was Raymond Duffany's. At trial, he testified for appellant as an expert in several fields, including railroad industry regulations. He opined that the No. 9 switch w as "not reasonably safe to operate,": Rust, sand and mud, he explained, were being pumped up from the tracks into the switch because the ballast (crushed stone) supporting the track structure was not properly draining. He said this condition violated 49 C.F.R. § 213.103(c), which states "Unless

---

4. The circuit court submitted its own verdict form to the jury.

it is otherwise structurally supported, all track shall be supported by material which will ... [p]rovide adequate drainage for the track...." 49 C.F.R. § 213.103(c). Buoyed by this testimony, appellant proposed jury instruction No. 22, which read:

The Court instructs the jury that if you believe from the greater weight of the evidence that [CSX] violated or failed to comply with any of the requirements of the [federal] Track Safety Standards, 49 C.F.R. Part 213, and that the violation or failure to comply contributed in any way, in whole or in part, even in the slightest, to cause the injury which [appellant] sustained on June 23, 2003, then [appellant] is not required to prove that [CSX] was negligent or that it failed to exercise ordinary care with regard to the condition of the switch. The duties imposed on [CSX] by the [federal] Track[ ] Safety Standards are absolute, and [CSX] is not excused by any showing of care, however diligent.

In addition, section 3 of the Federal Employer's Liability Act provides that though [sic] employee who sustains an injury cannot be held to have been contributorily negligent in any case where the railroad's violation of a statute or regulation enacted for the safety of employees contributed to cause an injury to the employee. Accordingly, if you believe from the greater weight of the evidence that [CSX] violated or failed to comply with any of the requirements of the [federal] Track[ ] Safety Standards, 49 C.F.R. Part 213, then [CSX] is not entitled to claim that the employee was contributorily negligent, and contributory negligence is not available as a defense.

Before we consider the merits of appellant's claim that the court should have given this instruction, we must first determine whether this issue was preserved for our consideration. CSX claims that it was not.

On June 13, 2006, the seventh day of this eight-day trial, after both parties had rested, appellant and CSX presented their proposed jury instructions to the court. Both

sides addressed at length the issue of whether instruction No. 22 should be given. The next day, the court instructed the jury but did not give instruction No. 22. Appellant objected, stating: "[W]e object to the refusal to give [appellant's] requested instructions on the Federal Track Safety Standards.... We object to the verdict form or issue sheet for the reasons it totally deletes and omits the Federal Track Safety Standards, or lack of a question for the jury on that point as we had requested in accordance with the *Kerns [sic] v. American Dredging* case (phonetic), the mock [sic] case, and the other cases mentioned during argument yesterday." He was clearly referring to the argument he advanced, the day before, in support of giving proposed instruction No. 22.

Maryland Rule 2–520(e) states in part, "No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection." Rule 2–520(e). "This rule requires 'parties to be precise in stating objections to jury instructions at trial, for the plain reason that the trial court has no opportunity to correct or amplify the instructions for the benefit of the jury if the judge is not informed of the exact nature and grounds of the objection.'" *Butler–Tulio v. Scroggins, M.D, et al.,* 139 Md. App. 122, 151, 774 A.2d 1209 (2001) *(quoting Fearnow v. Chesapeake & Potomac Tel. Co. of* Maryland, 342 Md. 363, 378, 676 A.2d 65 (1996)). If the party that objects fails to "'fully comply with the requirements of the rule ... there is nothing for us to consider on appeal.'" *Id.* (citations omitted). But, on the other hand, "no special form is required for the objection and no ground need even be stated 'where the record makes clear that all parties and the court understood the reason for the objection.'" *Sergeant Co. v. Pickett,* 283 Md. 284, 288–89, 388 A.2d 543 (1978) (citation omitted) (interpreting the precursor to Rule 2–520, former Rule 554).

Appellant clearly "object[ed] on the record promptly after the court instruct[ed] the jury" and referred to the previous

day's argument when "the matter to which [appellant] object[ed] and the grounds of the objection" were "distinctly" stated. *See* Rule 2–520(e). The argument as to that instruction was extensive and, given that it was made only the day before, there can be no doubt that the next day "all parties and the court understood the reason for the [ensuing] objection." *See Sergeant,* 283 Md. at 288–89, 388 A.2d 543. Hence, appellant's objection was preserved for our review. Having so ruled, we now turn to the merits of appellant's claims.

▇▇▇▇ At the outset, we note that "to rule upon the propriety of denying a requested jury instruction, a reviewing court must determine whether the requested instruction was a correct exposition of the law, whether that law was applicable in light of the evidence before the jury, and finally whether the substance of the requested instruction was fairly covered by the instruction actually given." *Wegad v. Howard Street Jewelers, Inc.,* 326 Md. 409, 414, 605 A.2d 123 (1992). Applying that three-part test, we find that the first paragraph of instruction No. 22, which addresses liability under the FELA for violations of the federal Track Safety Standards, correctly states the law, but that the second paragraph, which addresses damages under the FELA for violation of those regulations, does not. But, before we outline the basis for that conclusion, a brief exposition addressing the purpose of the FELA and the acts and regulations that fall under its statutory umbrella would be helpful.

▇▇▇▇ Codified at 45 U.S.C. § § 51–60, the FELA allows a railroad company employee, who is injured on the job, to bring an action against his or her employer for damages. *Miller,* 159 Md.App. at 129, 858 A.2d 1025. The action may be based on common law negligence or violations of certain federal safety statutes, specifically the Safety Appliance Act, 49 U.S.C. § 20301 *et seq.,* and the Boiler Inspection Act, 49 U.S.C. § 20701 et seq.[5] Those acts are in substance, if not in

---

5. The Boiler Inspection Act is now known as the Locomotive Inspection Act, 49 U.S.C. § 20701 *et seq.,* but the latter act incorporated substan-

form, amendments to the FELA. *Id.* at 138, 858 A.2d 1025 (*citing Urie v. Thompson,* 337 U.S. 163, 189, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)). If a railroad violates either of these two acts or the regulations promulgated thereunder and that violation contributed in any way to the injury of a railroad employee, the railroad is negligent *per se* and "the employee is relieved of any further burden of proving negligence on the part of the railroad." *Id.*

The Federal Railroad Safety Act of 1970 ("FRSA")[6] also falls, we believe, under the umbrella of the FELA. It was enacted "to provide comprehensive and uniform safety regulations in all areas of railroad operations." *Chicago Transit Authority v. Flohr,* 570 F.2d 1305, 1308 (7th Cir.1977). Regulations were thereafter promulgated pursuant to the FRSA by the Federal Railroad Administration. *Miller,* 159 Md.App. at 161, 858 A.2d 1025. The regulations pertinent to appellant's claims are the federal Track Safety Standards, 49 C.F.R. Part 213.

The first paragraph of instruction No. 22, as we noted earlier, correctly states the law of liability under the FELA for violations of the federal Track Safety Standards, 49 C.F.R. Part 213. It asserts that, if the jury finds that CSX violated or failed to comply with the federal Track Safety Standards,

---

tive provisions of the former. Thus, the cases construing the former are still controlling as to the latter. Because those cases use the term "Boiler Inspection Act," we will continue to refer to it as such to avoid confusion. Both the Boiler Inspection Act and Safety Appliance Act were recodified by Congress in 1994 and with other railroad statutes incorporated into the Federal Railroad Safety Authorization Act of 1994, 49 U.S.C. § 20101 *et seq.* Once again to avoid confusion we will refer to the Boiler Inspection Act as "Boiler Inspection Act," and to the Safety Appliance Act as "Safety Appliance Act" as well. *See* 6 ATLA's Litigating Tort Cases § 71:14 (2007).

6. In 1994, the Federal Railroad Safety Act was replaced by the Federal Railroad Safety Authorization Act of 1994, 49 U.S.C. § 20101 *et seq.* (FRSAA), which incorporated the substantive provisions of the FRSA. We will continue, however, to refer to the Act as the FRSA to avoid confusion because the cases cited in this opinion refer to the FRSA, not the FRSA A. *See* 6 AT LA's Litigating Tort Cases § 71:14 (2007).

49 C.F.R. Part 213, and that violation "contributed in any way, in whole or in part, even in the slightest, to cause" appellant's June 23, 2003 injury, then appellant "is not required to prove that [CSX] was negligent or that it failed to exercise ordinary care with regard to the condition of the switch" to establish CSX's liability for appellant's injury. CSX violated, according to appellant, 49 C.F.R. Part 213, specifically 49 C.F.R. § 213.103(c), which states: "Unless it is otherwise structurally supported, all track shall be supported by material which will ... [p]rovide adequate drainage for the track ...." 49 C.F.R. § 213.103(c).

The first paragraph in effect asserts that a violation of 49 C.F.R. § 213.103(c) creates liability under the FELA and that assertion finds support in *Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). In *Kernan*, the United States Supreme Court held that the dependants of a seaman killed at sea could recover damages under the Jones Act based on a violation of a navigation regulation. *Kernan*, 355 U.S. at 431, 78 S.Ct. 394. Because the Jones Act "created a federal right of action for the wrongful death of a seaman based on the statutory action under the Federal Employers' Liability Act," *id.* at 429, 78 S.Ct. 394, the Court engaged in extensive analysis of the FELA. It found that because the FELA does not suggest that only violations of the Safety Appliance and Boiler Inspection Acts create liability under the FELA, "the nature of the Acts violated is not a controlling consideration...." *Id.* at 437–38, 78 S.Ct. 394. Indeed, the FELA, the Court concluded, abandoned the common law tort rule that a "violation of a statutory duty creates liability only when the statute was intended to protect those in the position of the plaintiff from the type of injury that in fact incurred," in favor of the principle that "where the employer's conduct falls short of the high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues." *Id.* at 438–39, 78 S.Ct. 394. "[T]his result follows," the Court explained, "whether the fault is a violation of a statutory duty or the more general duty of acting with care, for the employer owes the employee, as much as the duty of acting with care,

the duty of complying with his statutory obligations." *Id.* at 439, 78 S.Ct. 394.

If any doubt remains as to the extent of the reach of this statutorily-wrought principle, the dissent authored by Justice Harlan instantly dispels it. In that dissent, Justice Harlan wrote that the majority had established "a doctrine under the FELA that injuries following any violation of any statute, not simply the Safety Appliance and Boiler Inspection Acts, are actionable without any showing of negligence...." *Id.* at 445, 78 S.Ct. 394. The majority, we note, took no issue with this characterization of its holding.

Recently, this reading of *Kernan* was confirmed by the Seventh Circuit in *Schmitz v. Canadian Pacific Railway Company*, 454 F.3d 678 (7th Cir.2006). Declaring that "*Kernan* extended the FELA liability principles established in the Safety Appliance Act and Boiler Inspection Act line of cases" beyond "cases involving violations of those two Acts," the Seventh Circuit held that the trial judge erred in failing to give an instruction requested by an injured railroad employee that the railroad's violation of the federal Track Safety Standards, specifically 49 C.F.R. § 213.37(c), created liability under the FELA, regardless of whether the regulation was designed to protect against the specific type of harm suffered by the employee. *Schmitz*, 454 F.3d at 683. Thus, the first paragraph of appellant's requested jury instruction No. 22 was a correct exposition of the law.

▪ But, as we previously stated, the second paragraph was not. It read:

> In addition, section 3 of the Federal Employer's Liability Act provides that though [sic] employee who sustains an injury cannot be held to have been contributorily negligent in any case where the railroad's violation of a statute or regulation enacted for the safety of employees contributed to cause an injury to the employee. Accordingly, if you believe from the greater weight of the evidence that [CSX] violated or failed to comply with any of the requirements of the [federal] Track[ ] Safety Standards, 49 C.F.R. Part 213,

then [CSX] is not entitled to claim that the employee was contributorily negligent, and contributory negligence is not available as a defense.

Section 3 of the FELA, now 45 U.S.C. § 53 and entitled "Contributory negligence; diminution of damages," states:

In all actions on and after April 22, 1908 brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* **That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.**

45 U.S.C. § 53 (emphasis added).

■■■ Thus, it prohibits a common carrier from raising a defense of contributory negligence, but only "where the violation by such common carrier of any statute" that contributed to the death or injury of an employee "was enacted for the safety of [such] employees. . . ." 45 U.S.C. § 53. Since this Court stated in *Miller* that 49 C.F.R. § 213.103(c) was not enacted for the safety of employees, no such prohibition prevented CSX from raising that defense as to damages. *See Miller*, 159 Md.App. at 167, 858 A.2d 1025. That regulation, as we observed in *Miller*, was concerned with "the safety of the train, the prevention of derailments, and not the quality of the work place provided for employees." *Id.* Hence proposed instruction No. 22 presents an incorrect exposition of the law. And, as to damages under the FELA, because appellant never requested anything other than that the circuit court give the whole instruction, that court did not err in declining to do so.

Since we find that the instruction was an not a correct exposition of the law, we need not reach the other two criteria for giving a party-requested instruction: "whether that law was applicable in light of the evidence before the jury, and . . . whether the substance of the requested instruction was fairly covered by the instruction actually given." *Wegad*, 326 Md. at 414, 605 A.2d 123.

Appellant also claims that the circuit court erred in failing to give proposed jury instructions Nos. 15 through 18, which read as follows:

[No. 15:] The duty of a railroad to provide its employees with a reasonably safe place to work includes the responsibility to furnish its employees with safe and suitable instrumentalities, equipment and appliances, including railroad switches. If the railroad fails to perform this duty, then it is negligent.

[No. 16:] The duty of a railroad to provide its employees with a reasonably safe place to work includes the responsibility to inspect and maintain its equipment, including switches, and to take adequate and reasonable precautions to protect its employees from reasonably foreseeable danger. If the railroad fails to perform this duty, then it is negligent.

[No. 17:] Under the Federal Employer's Liability Act, if an employer undertakes to determine whether an employee is physically fit for a job, the employer is liable if it performs such determination in a negligent fashion and injury results. Accordingly, if you find that the Medical Department of CSX Transportation, Inc. was negligent in determining [appellant's] fitness for service as a conductor or in returning him to work in that position without any restrictions, then you may find your verdict in favor of [appellant].

[No 18:] The duty of a railroad to provide its employees with a reasonably safe place to work includes the duty not to assign an employee to work or to a position for which the railroad knows or reasonably ought to know the employee is

not physically suited. If the railroad fails to perform this duty, then it is negligent.

On June 13, 2006, the day before both sides rested and the court instructed the jury, CSX objected to the proposed instructions, stating that they were "unnecessarily specific" because they were "an itemization" of appellant's theories of negligence.

While the court did not give the instructions, it did give a negligence instruction, stating:

Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... and for such injury resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, or other equipment.

. . . .

A railroad is liable in damages, money, to its employee for any injury that is caused in whole or in part by any negligence on its part. For purposes of this case, injury or damage is said to be caused or contributed to by an act or failure to act when it appears ... that the act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage.

. . . .

Under the FELA, a railroad employer must provide its employees with a reasonably safe place to work, ... and to provide reasonably safe equipment. In such a case, [appellant] must prove ... that [CSX] breached [its] duty to provide a reasonably safe work place.

. . . .

In addition to that instruction, the court provided the jury with a verdict sheet containing a question regarding whether CSX was negligent in returning or assigning appellant to work as a brakeman/conductor in 2002.

After the court finished instructing the jury, appellant objected, saying "[W]e object to the refusal to give [appellant's] requested instructions . . . concerning [CSX's] duties under the F.E.L.A. and also concerning [appellant's] theories of negligence." However, CSX claims, as it did with respect to appellant's proposed instruction No. 22, that appellant did not thereby "state distinctly" the matter to which he objected and thus did not preserve for our review his contention that the court erred in omitting these instructions. But the day before, appellant did discuss these proposed instructions with both the court and opposing counsel. In fact, at that time, counsel for CSX objected to appellant's "theories of negligence," claiming that they were unnecessarily specific. Thus, when in objecting to the court's instructions, appellant explained that he was protesting the court's decision not to give his "theories of negligence" instructions, the record is clear that "all parties and the court understood the reason for the objection," and so "no special form [was] required for the objection and no ground need[ed] even be stated." *Sergeant Co.*, 283 Md. at 288–89, 388 A.2d 543. Hence, this issue was also preserved for our review.

As we stated earlier, in reviewing the denial of a requested instruction, we must determine whether that instruction "was a correct exposition of the law, whether that law was applicable in light of the evidence before the jury, and finally whether the substance of the requested instruction was fairly covered by the instruction actually given." *Wegad,* 326 Md. at 414, 605 A.2d 123. But here we do not need to reach the first two prongs because the substance of the requested instructions were "fairly covered by the instruction[s] actually given." *See id.* Appellant's requested instructions 15 and 16 dealt with CSX's duty to provide appellant with a reasonably safe place to work. In its negligence instruction, the court did so instruct the jury, as we noted earlier.

Moreover, appellant's requested instructions 17 and 18 addressed CSX's purported negligence in returning appellant to a type of work for which he was allegedly not suited. The

verdict sheet dealt with this specific issue and the court, in its instructions, gave negligence instructions broad enough to cover this issue.

 It is well settled that " 'so long as the law is fairly covered by the jury instructions, reviewing courts should not disturb them.' " *Zografos,* 165 Md.App. at 109, 884 A.2d 770 (*quoting Farley v. Allstate Ins. Co.,* 355 Md. 34, 46, 733 A.2d 1014 (1999)). The law on negligence under the FELA was fairly covered by the court's jury instructions and so we will not disturb them.

Finally, appellant argues that, "in conjunction with its ruling concerning evidence of settlement of prior claims and compensation received for those claims," the court erred in "includ[ing] language in its charge pertaining to prior claims and prior compensation." For the reasons we discussed in Issue I, the court did not err by including such language in its charge.

## III.

 Appellant maintains that CSX engaged in "improper argument and misstated the law applicable to the case, which the trial court failed to correct." That argument is based on CSX's counsel's interpretation, during closing argument, of instructions that the court had earlier given the jury. The court had instructed the jury, in pertinent part, "You are not to award any damages for those injuries that arise out of claims that have been resolved and for which [appellant] has previously been compensated. The affect that an injury might have upon a particular person depends upon the susceptibility to injury of that person." "In other words, the fact than an injury would have been less serious if inflicted upon another person should not," the court explained, "affect the amount of damages to which a Plaintiff may be entitled."

Referring to that instruction, counsel for CSX, during closing argument, reminded the jury that appellant had brought three previous claims against CSX and was compensated for those claims. Elaborating, he stated:

[CSX's Counsel]: ... The court has instructed you, ladies and gentlemen, that you are not to award any damages for those injuries that arise out of claims that have been resolved and for which [appellant] has been previously compensated. So, if you feel that his problem in this case stems in whole or in part from those prior, any one of those prior injuries and most particularly the most recent one, the November 1999 one, which actually caused the herniation at that time, then pursuant to this Court's instruction, you are not to award any damages if you feel that anything at issue in this case arises out of those prior act injuries.

That prompted the following exchange between counsel:

[Appellant's Counsel]: Your Honor, we must object. That is an improper statement of the F.E.L.A. and I want my, I want my objection noted on the record. That's, that's an improper statement of the law.

[CSX's Counsel]: Your Honor, I read the instruction verbatim.

[Appellant's Counsel]: That's not what he argued, and that's not the law, what he just told the jury.

The court ended the dispute by stating:

[The Court]: Thank you, ladies and gentlemen of the jury. I gave you lengthy instructions, I know they were long in number. There were several instructions that would have application to this issue and this argument, so you can consider the argument that is being made, but please consider all parts of the instructions that were given. Proceed, counsel. Your objection is noted."

Quoting *Hairston v. State,* 68 Md.App. 230, 511 A.2d 73 (1986) that "[w]here an objection to opening or closing argument is *sustained* ... there is nothing for this Court to review unless a request for specific relief, such as a motion for a mistrial, to strike, or for further cautionary instruction is made," CSX argues that appellant's argument has not been preserved for appeal because appellant did not make such a request. *Hairston,* 68 Md.App. at 236, 511 A.2d 73. But, we observe that, if appellant's objection to the closing argument

was overruled, then the issue was preserved even though appellant did not make any further requests. *Id.*

The court noted appellant's objection but then, while giving what appeared to be a curative instruction by telling the jury to "consider all parts of the instructions that were given," the court informed the jury it could "consider the argument that is being made," meaning CSX's counsel's closing argument.

Thus it is not altogether clear what the court did here, that is, overrule or sustain appellant's objection. But no matter what it did, it is of no consequence. CSX's counsel's statement was "you are not to award any damages if you feel that anything at issue in this case arises out of those prior act injuries." Because the jury never reached the issue of damages, the court's purported tolerance of that statement, if error, was harmless.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**